### STATE ex MOTT v BOARD OF EDUCATION OF DARKE CO. et

Ohio Appeals, 2nd Dist, Darke Co

No 581. Decided June 10, 1941

B. A. Myers, Celina; O. J. Myers, Dayton, for relator.

George W. Porter, Greenville; Wilbur D. Spidel, Greenville, for respondents.

## OPINION

By GEIGER, PJ.

This matter is before this Court upon a petition for mandamus filed in this Court on the 12th day of April, 1940.

Briefly, the relator avers that he is a duly qualified elector residing in Mississinawa Township, Darke County and that certain individuals have official positions in relation to the Darke County Board of Education and that one E. N. Dietrich is the Director of Education of the state of Ohio.

Relator averred that on or about July 3, 1939, he, together with other residents of the territory, presented to the Darke County Board of Education a petition asking the Board to transfer from the Darke County School District to the Mercer County School District of Mercer County under the authority of §4696 GC, the premises described, all located in the township of Mississinawa, Darke County. The petition sets out the names and addresses of 92 individuals alleged to have signed said petition and it is averred that the same represents more than 75% of the electors residing in said territory. The total number of electors was alleged to be 116.

It is further averred that at the time of the filing of the petition all of the qualified electors who signed the same were willing and desirous that the territory be transferred in accordance with the request of said petition and are still desirous that said transfer be effected; relator further avers that accompanying the petition was a map setting forth and describing the territory sought to be transferred to the Mercer County District and that said map also showed the contiguous territory. Relator avers that without cause or reason the Darke County Board of Education did, on the 11th day of October, 1939, decline the prayer of the petition and did refuse to order the transfer of the territory from the Darke County School District to the Mercer County School District; that the Board refused to do so in violation of §4696 GC. He avers that said petition and map was filed with the Director of Education of Ohio and that said Director has failed to take any action; that the suit is being prosecuted on behalf of all persons similarly situated. The prayer is to the effect that an alternative writ issue requiring the Darke County Board and the Director of Education to make said transfer to the Mercer County School District in accordance with the statute.

Upon application this Court allowed an alternative writ returnable on the 11th day of May, 1940, and it was ordered that the defendants make the transfer of the territory from Darke County School District to the Mercer County School District or show cause.

The Board of Education of Darke County answered on May 24, 1940.

As a first defense they admitted certain allegations and denied all others.

As a second defense they say that before the Darke County Board of Education had completed its investigation of the petition for transfer, a petition was filed with the Board containing the names of fifteen electors for the removal of their names from the petition and that investigation disclosed

that three of the persons who had signed were not electors of the school district or of the territory sought to be transferred; that at the time the Board of Education met to consider the petition and at the time said petition was acted upon said petition did not contain the signatures of 75% of the electors.

The defendants further aver that at said time the Board of Education of Mississinawa Rural School District, by resolution, decided against the transfer.

As a third defense it is stated that some of the signatures to the petition for transfer were obtained by false representations in the manner set out and it is alleged that but for the false representations a considerable number of persons who signed the petition would not have done so in the first instance and that the signatures of such persons should be eliminated from the petition and that thereafter there are less than 75% of the electors signing the petition.

For the fourth defense the answering defendants say that at a primary election on May 14, 1940, the electors of Mississinawa Township Rural School District, of which the territory described in the petition is a part, voted to centralize said rural school district of Darke County, including therein the territory described in the petition and that said resolutions for centralization of said rural school district was passed and approved by a majority of the electorate of the Mississinawa Rural School District.

The prayer of the answer is that the writ be denied.

A reply is filed by the relator denying all allegations set out in the answer inconsistent with the allegations of the petition.

By way of further reply, relator states that defendants, or some agent on their behalf in the effort to defeat the petition, had certain individuals named to sign a paper in an effort to remove their signature from the petition; that prior to any action being taken by the Board, such parties signed another paper retracting their action or attempted action to remove their signatures from the original petition, and requesting that their names remain on the original petition and that the territory be transferred. In reply to the fourth defense, relator denies the facts set out therein and states that in case the Court should find that the allegations of the fourth defense are true, that said election and all proceedings in connection therewith were instituted and held after the County Board had acted upon the petition set out.

On May 26, 1941, relator filed an additional reply without designating whether it be an amendment of or supplement to the first reply. For reply to the second defense, relator says that he admits that there were fifteen persons who signed the petition to withdraw their names from the petition, but alleges that after the petition was filed that the Board procured the services of one Rev. A. W. Lynn to go into the territory and solicit the removal of the signatures and prepared the petition and had the same circulated in said territory for the purpose of defeating the petition; that eleven of the persons who signed said withdrawal petition asking that their names be restored; that on the date when the petition was heard there resided in said territory 115 electors of whom 88 had signed the petition praying for the transfer; that said Board at its meeting found and determined that more than 75% of the electors sought to be transferred had signed the petition.

Relator says that by reason of the facts stated, the defendant, School Board, is estopped to deny the right of transfer as prayed for.

The allegations of the third defense are denied.

For reply to the fourth defense, relator says that the defendant Board, in disregard of its duty and in violation of law, knowing that more than 75% have signed the petition and that said Board was bound under the law to transfer the territory, in an effort to defeat the transfer employed A. W. Lynn to go into the territory, who in-

terviewed many voters advising those who had signed the petition against the transfer and made a report to the defendant listing those whom he had induced to withdraw. Whereupon, the Board prepared and had circulated a petition to be signed by those who had signed the petition for transfer withdrawing their names and asking that the transfer be denied; that thereafter when said petition came to the Board for consideration, the Board checked the names of the electors residing in the territory who had signed the petition and found that such number of signers of said petition exceeded 75%, but delayed the transfer until the Board, by resolution, could call an election for centralization; that said Board by resolution ordered a vote on centralization and sent their personal representative into the territory for the purpose of controlling the election and thereby defeated the purpose and intent of §4692 and through their illegal acts succeeded in carrying centralization in said territory and at said time did not intend and still do not intend to provide any additional or different facilities for educational purposes for the pupils residing in said territory than those provided in the past; that said election was a fraud upon the voters and that the defendant is estopped to plead the centralization of the School Board as a defense.

It will be observed that while there is new matter plead in the reply filed May 26th, there are allegations which seem to overlap and repeat the allegations of the original reply.

The petition for the transfer of the territory had rather rough sailing in its passage to final defeat before the School Board of Darke County as may be briefly noted.

Following the filing of the petition, an undated request was filed, Plaintiff's Exhibit 3, signed by fifteen of the signers of the petition, withdrawing their names from the petition filed with the Board. After this filing, on August ____ a withdrawal was filed, signed by eight of those signers of the original petition who previously had requested

that their names be withdrawn. On October 20, 1939, two additional electors originally signing the petition asking that their names be withdrawn, retracted this request, and asked that their names be restored to the original petition. If the original withdrawal and withdrawal of the withdrawal were legally made it would leave a total of 87 names, there having been 15 withdrawals and 10 revocations of the withdrawals.

On the 6th of July, 1939, the Board met and after discussing the matter, adjourned without action and again met on August 3rd where the minutes disclose that a motion was passed that the angle of fraud in obtaining signatures to the petition requesting the transfer be investigated before the Board acted and the Board thereupon adjourned and reconvened on the 7th of September and the secretary reported that on the investigation it was disclosed that 14 of the original signers had withdrawn their names, five affidavits were secured covering various phases of misinformation; a petition signed by 8 residents requesting that their names be withdrawn was filed. At this meeting no action was taken.

The Board met again on September 20, 1939, and it was moved that the petition for the transfer of the property to the Mercer County School District be denied, the vote of the board members being 3 to 2 in favor of the denial.

The minutes of that date state, "It was moved by Mr. Schaeffer that the petition for transfer of the territory in the northwest corner of Mississinawa Township to Mercer County School District be denied * * * . Motion carried." It will be observed that this motion does not disclose upon what ground the petition was denied, whether for lack of signatures; for infirmities of the petition developed by investigation; whether the withdrawals left less than 75% or whether the denial was made by the Board for other reasons. While at the meeting at which the petition was denied there was no record of the causes that led the Board

to such a vote, yet we find in the meeting of April 1, 1940, in which the resolution calling for a vote on the centralization was adopted, there appears several statements which led the Board to call for a centralization vote in Mississinawa Township, among them being the Board is desirous of promoting the best interests; that the Board is of the opinion that the best interests of the district would be served by submitting to the electors the question of whether the district should be centralized. Nothing is said in this resolution about the uncertainty as to whether 75%. had signed or any of the other controversial matters before the Board.

The reply filed May 26th states "that on the date when said petition . was heard there resided in the territory" etc. It does not give any date at which this meeting was held. The assumption would be that it was the meeting of September 20, 1939, when. the petition was finally denied, although an earlier date may be intended.

It is further stated in said reply that "said Board of Education at its meeting found and determined that more than 75% of the electors of said ; territory sought to be transferred had signed said petition praying for the transfer of the territory" and that by reason thereof the Board is estopped to deny the right to transfer. We have searched the record for any finding of the Board that 75% of the electors had, at any time, signed the petition. Counsel may have reference to plaintiff's Exhibits 11, 12 and 13, consisting of three separate yellow sheets with certain figures alleged to have been placed thereon by the Superintendent of Schools. We would not endeavor to interpret the meaning of these figures. They seem to be a tally sheet kept by someone. Whatever may have been disclosed by these yellow sheets, it certainly does not support the allegation that the Board "found and determined that more than 75% of the electors had signed the petition". It is not an official document. it is difficult of interpretation and is not a safe basis for the conclusion that the Board found

that 75% had, as a matter of fact, signed after the withdrawals and revocations.

It is claimed by the relator that on the 20th of September, 1939, it was determined by the Board and publicly announced that the petition was signed by more than 75% of the electors taking into account the withdrawal and reinstatement of signatures. There is no record supporting this claim.

Afterwards there was a resignation of one of the members of the Board of Education of Mississinawa Township and a new member substituted by the majority of the Board opposed to the transfer of which relator complains. It was further asserted that representatives of the Board and the Superintendent of Schools circulated false reports in the territory to induce a number of signers to withdraw their names. The relator introduced exhibits claiming to set out the figures on several yellow sheets kept by the County Superintendent that it had been determined by the Board that the total number of electors were 114 and that the necessary 75% would be 86, making the margin of 1 between the required number and the number alleged to have finally remained as petitioners. The relator in his last reply states that the number of electors at the date the petition was heard was 115 of whom 88. had signed. 87 is 75% of the 115 residents.

It further appears from the minutes of the County Board of Education. under date of April 1; 1940, that the Board then discussed placing the question of centralization of the territory in question on the primary ballot in the Allen Township School District and the Mississinawa Township School District. A resolution was there presented and passed that the Township Rural School District is directed, in conformity with §4726, to call a special election to submit to the electors of the township rural school district the question as to whether the said district should be centralized. Upon this question being submitted. it was certified to the Secretary of State that the vote was 111

in favor of and 83 against centralization.

This is an application for a writ of mandamus to be issued in the name of the State to an inferior board commanding the performance of an act which the law specially enjoins as a duty resulting from an office. It will not lie where the employment of the writ does not give a full and complete remedy or where the law affords another adequate remedy and will issue only where a clear right appears. It is not the function of this special proceeding to afford an opportunity for litigating parties to conduct a contest in order to determine the ultimate duty of the Board against whom the writ issues.

The testimony of many witnesses is exhibited to us covering more than 500 pages and many affidavits have been presented. Most of the evidence presented relates to the authenticity of the signatures to the petition filed with the Board of Education and to the number of signatures still remaining after certain individuals had withdrawn their signatures and others had asked that the same be restored. The testimony also goes to the question as to whether there were unauthorized signatures to the petition growing out of the fact that there were certain signatures claimed to be written by persons assuming authority not only to sign on their own behalf, but on behalf of members of their family. Evidence was also introduced touching the claim that certain signatures were those of individuals who did not live within the territory and were never authorized to sign the petition.

There were investigations made by the order of the Board touching all these matters and also of rumors that there was fraud in obtaining original signatures due to misrepresentations asserted to have been made. After these investigations, a report was made to the Board to the effect that there were 119 electors in the district of whom 92 had signed the petition, 27 not signing. Of those who signed 15 sought to withdraw their names, 10 of whom asked to be restored. If the report was correct that there were 119 electors within the district, the required 75% would be 89.25 or 90 signatures required and it appears that after the withdrawal there were only 87 on the petition.

The petition was filed under the provisions of §4696 GC, which provides that a county board may upon the petition of a majority of the electors transfer territory to a contiguous exempted village, city or county school district. Upon the petition of 75% the board shall make such transfer. A county board may accept a transfer of territory and annex the same to a contiguous school district of the county school district. In case of such transfers, an equitable division of the school funds and indebtedness between the districts involved shall be made by the appropriate boards and "a map shall be filed with the county auditor of each county affected by the transfer".

The petition filed with the Board states that the electors of Mississinawa Township School District, Darke County, petition the Board that it cause to be transferred to Mercer County School District, Mercer County, the territory described.

State v Miami County Board of Education, 131 Oh St 306, was an action in mandamus wherein it was sought to secure the transfer of territory from Union Township Rural School District, Miami County, to the Monroe Township Rural School District, Darke County. The court in an entry held,

"On consideration whereof it is ordered and adjudged that the writ of mandamus be and the same hereby is denied on the ground * * * that §4696 GC does not authorize the transfer of territory from one rural school district in one county to another rural school district in another county."

It is regrettable that the court did not give its reasons for this ruling other than the journal entry. If that be a correct statement of the court's hold-

ing, then manifestly the School Board of Darke County was not required or authorized by said section to make the transfer and a writ of mandamus will not lie if the authority of this case would apply equally to a transfer from one rural school district to another county school district as in this case.

We do not find it necessary to rely upon the above cited authority as the Supreme Court has recently spoken in language which, we think, is determinative of this case.

By a resolution passed April 13, 1940, a special election was called in Mississinawa Township Rural School District to be held upon the 14th day of May, 1940, submitting the question as to whether or not that rural school district shall be centralized. This election was held and it was certified to the Secretary of State that 111 voted in favor of centralization and 83 against and that the centralization has been completed.

We find the case of Anderson v Hancock County Board of Education, 137 Oh St 578, of value and the same should be read, although the facts there passed upon are not the same as appear in this record.

State, ex Apple v Pence, 137 Oh St 569, seems to us to be so nearly on all fours with the case at bar as to need nothing further than its citation. The question is thoroughly discussed and pertinent cases are cited and commented upon. The syllabus is to the effect that in exercising the extraordinary power of mandamus, a court should take into consideration the facts and conditions arising at the time it determines whether to issue a peremptory writ. This case arose in Shelby County decided by this Court. We quote from the decision of the Supreme Court:

"The Court of Appeals held: 'Plaintiff's rights must be determined as of February 11, 1939, (the day of filing the petition) and hence the subsequent action through which centralization was effected would not defeat the right.' In so holding the court below erred."

Turner, J., delivering the opinion of the Court cites numerous cases to the effect that when a court is asked to exercise extraordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue. To comment further upon this case would be simply to restate what has already been so well stated by the Judge delivering the opinion of the Court. We, therefore, satisfy ourselves with citing the case and commending it to a careful reading by those who may be interested.

It seems to us that the submission to the electors and the favorable vote that there should be centralization of the school district in question presents a new situation not existing at the time the petition was filed, but now brought to the attention of the Court, which, under the rules so well stated in the Apple case, require that the writ should be denied.

Counsel also takes the position that the evidence shows that the School Board of Darke County, in its effort to defeat the transfer of the property, instigated the vote resulting in centralization We do not regard this as being of consequence and even if it was, any act that may have been illegal can not be corrected by a proceeding in mandamus.

Counsel assert that the Board is estopped because of certain activities upon its part in securing a vote upon centralization, it being asserted that the only purpose of this was to defeat the petition and that the Board has no intention of ultimately centralizing the territory according to the vote. Of course, we can not look to the future and determine what the Board intends to do. We do not believe that the activities of the Board, alleged in the reply and to some extent supported by the testimony, invalidates the result of the vote for centralization. No doubt.

there were many influences pro and con in this election as the question seems to have been bitterly contested. Those who were in favor of centralization were entitled to present their arguments to the electors as were those opposed to it. It is all a part of the machinery of democracy and we can not now listen to a party who asserts that there were activities which produced the given results.

It may be conceded that the position of the relator is correct in all the matters touching these various allegations, but the question must be finally determined under the Apple case as to what was the situation at the time we, as a Court, finally determine whether or not the writ shall be allowed. We do not see how the effect of the Apple case can be avoided. The proposition to be decided is clearly whether, at this time, the facts existing justify the allowance of the writ. The Apple case, we think, clearly demonstrates that the writ can not be allowed. That case holds "in exercising the extraordinary power of mandamus, a court should **take into consideration** the facts and conditions existing at the time it determines whether to issue a temporary writ". The holding is to the effect that the court **should take into consideration** the facts existing at the time of its decision.

We are required to pass upon the question as to whether, under the facts now existing, the writ should be denied. Upon this point, the Apple case is instructive and the facts there disclosed are so similar to those of the instant case that we must arrive at the conclusion that the facts now existing require the denial of the writ. We think that much that is said in **State ex Haines v Board of Education, 131 Oh St 609**, might well support a refusal of the writ in this case.

Writ denied.

BARNES, J., concurs in judgment on authority of State ex Apple v Pence, 137 Oh St 569.

HORNBECK, J., concurs in judgment.